STROZIER v FLINT COMMUNITY SCHOOLS

Docket No. 299704. Submitted December 7, 2011, at Detroit. Decided
    December 20, 2011, at 9:00 a.m.

Alexus Strozier, a minor, by her next friend, Abbey Strozier, brought
    an action in the Genesee Circuit Court against Flint Community
    Schools, Middle Cities Risk Management Trust, and Gallagher
    Bassett Services, seeking damages for injuries sustained when a
    city of Flint sanitation truck collided with the school bus in which
    she was riding. The driver of the school bus and the driver of the
    sanitation truck gave different versions of how the accident
    occurred. Strozier later amended her complaint to add the City of
    Flint Department of Sanitation, claiming that the garbage truck
    driver had negligently operated the truck when the accident
    occurred. The sanitation department moved for summary disposi-
    tion pursuant to MCR 2.116(C)(7) and (10), arguing that Strozier's
    claim was barred by governmental immunity and that she had
    failed to present sufficient evidence of the garbage truck driver's
    negligence. The court, Archie L. Hayman, J., denied the sanitation
    department's motion, holding that the conflicting testimony re-
    garding whether the garbage truck was moving at the time of the
    incident created a genuine issue of material fact, but did not
    address the issue of governmental immunity. The sanitation
    department appealed.

    The Court of Appeals held:

    1. Alexus's deposition testimony that the garbage truck was
    moving forward when it collided with the bus was not inadmissible
    hearsay, MRE 602, because her references to remembering the
    events reflected personal knowledge.

    2. Under MCL 691.1407(1), a governmental agency is immune
    from tort liability if the governmental agency is engaged in the
    exercise or discharge of a governmental function. The motor-
    vehicle exception to this rule, MCL 691.1405, allows a party to
    maintain an action against a governmental agency for bodily
    injury and property damage resulting from the negligent operation
    by any officer, agent, or employee of the governmental agency, of a
    motor vehicle that the governmental agency owns. Operation of a
    motor vehicle means that the motor vehicle must have been

operating as a motor vehicle and only encompasses activities that are directly associated with the driving of a motor vehicle. Alexus's claim against the sanitation department was not barred by governmental immunity because even if the garbage truck was stopped at the time of the accident, it was carrying out its intended function of picking up garbage. Because a garbage truck cannot perform that function without periodically stopping to pick up garbage, doing so is necessarily included within the "operation" of the truck under the motor-vehicle exception. Summary disposition under MCR 2.116(C)(7) was properly denied because the motor-vehicle exception applied under either party's version of the accident.

Affirmed.

GOVERNMENTAL IMMUNITY — MOTOR-VEHICLE EXCEPTION — OPERATION OF A MOTOR VEHICLE — GARBAGE TRUCKS.

A governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge of a governmental function; under the motor-vehicle exception to governmental immunity, however, a party can maintain an action against a governmental agency for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner; "operation" requires that the motor vehicle must have been operating as a motor vehicle and only encompasses activities that are directly associated with the driving of a motor vehicle; temporary stops on the road to pick up garbage are included within the operation of a garbage truck (MCL 691.1405, 691.1407[1]).

*The Thurswell Law Firm, P.L.L.C.*. (by *Mark E. Boegehold*), for Alexus Strozier.

*Foster, Swift, Collins & Smith, P.C.* (by *Scott L. Mandel* and *Pamela C. Dausman*), for Flint Community Schools and Middle Cities Risk Management Trust.

*Thomas L. Kent* for the City of Flint Department of Sanitation.

Before: MURPHY, C.J., and JANSEN and OWENS, JJ.

PER CURIAM. Defendant-appellant City of Flint Department of Sanitation[1] appeals as of right the trial court's order denying its motion for summary disposition under MCR 2.116(C)(7) and (10). We affirm.

## I. FACTS

This case arose out of a collision between a school bus and a garbage truck that injured Alexus Strozier,[2] a passenger on the school bus. On April 2, 2007, city of Flint sanitation department employee Mathew Dingel and his partner, Aaron Slagg, were collecting garbage on Fleming Road. Dingel drove the garbage truck, making periodic, brief, temporary stops in the right lane to allow Slagg to collect the garbage and deposit it into the back of the garbage truck. As they collected garbage, a school bus approached from behind the left side of the garbage truck and then, according to Dingel, as it passed the truck, merged into the lane in which the garbage truck was sitting. Although he remembered thinking that the bus had nearly hit his truck, Dingel initially thought that the bus had missed the truck because he did not feel an impact. Dingel and Slagg continued their garbage route. About two hours later, Dingel received a call from his supervisor, who told him that Dingel had been involved in an accident with the bus. Dingel realized that the bus driver had straightened out too quickly after merging, which had caused the rear end of the bus to swing into the truck. Dingel stated that the garbage truck had been running and ready to proceed to the next stop, but was not moving at the time of the collision, and that the bus ran into the truck.

---

[1] In this opinion, the term "defendant" will refer only to defendant-appellant City of Flint Department of Sanitation.

[2] Because Strozier is a minor, her mother, Abbey Strozier, brought this action on her daughter's behalf.

Slagg described the events slightly differently. Slagg stated:

> Well, I was off of the truck when the bus passed by us, okay? I was picking up the trash and he passed by at a pretty -- at an excessive speed. And I was thinking to myself if my kid was riding that bus I would be very upset at how that guy was driving because there was a car coming -- see, Fleming Road is a two lane road. There was a car coming northbound and we were heading southbound so our garbage truck takes up the full lane and he passed between the cars, the bus driver, he cut the guy who was heading northbound off and cut in front of us. And when I stepped back on the truck to go my partner started to take off and he jammed on the brakes, made me slam into the back of the truck, you know, and I got pretty upset, I was yelling at him. And he went like this and there was a bus, he stopped right in front of us. And we stopped. And when the bus took off, I guess, I don't know if there was a collision or not, but I didn't feel any collision on the back of the truck, you know, when I was standing on the back of the truck so . . . [.]

The driver of the bus, Renzellus Brown, stated that he felt a bump as he drove past the garbage truck. Brown initially thought that the street had caused the bump he felt, but a student on the bus told him that the bus had been hit. Brown continued to drive for about a block before pulling the bus to the side of the road. He then inspected the bus and saw that it had been damaged in the rear. Brown stated during his deposition that he had not seen the collision with the truck and that he had not seen the truck move. However, Brown wrote an accident report on the day of the collision in which he stated that the truck "started to take off and clipped" the bus.

Alexus Strozier also stated that the truck moved forward and hit the bus. Strozier stated:

> We was -- after we left my stop we went to some more stops. We turned off Pasadena on to -- I can't remember

> what street it was, but we turned on I think it's Myrtle. If I'm not mistaken it's Myrtle Street on to Leerda and picked up some kids.
>
> And then we went down some more -- we was going -- the bus -- no, the garbage truck had stopped. So the bus was going around the garbage truck. And then the garbage truck started moving and then that's when he had picked up some speed and ended up hitting the school bus.

After the collision, Brown finished his bus route and dropped the children off at school. After they arrived at school, some of the children told a teacher what had happened, and the teacher had them write out statements. Several of these statements also support plaintiff's contention that the garbage truck was moving at the time of the collision.

As a result of the collision, plaintiff filed a complaint against the Flint Community Schools and the school's insurer, alleging that Brown's negligent driving had caused the collision. Plaintiff later amended her complaint to add the City of Flint Department of Sanitation as a defendant, alleging that Dingel had negligently operated the garbage truck. Defendant then filed a motion for summary disposition under MCR 2.116(C)(7) and (10), arguing that governmental immunity barred plaintiff's claim and that plaintiff had failed to produce sufficient evidence of defendant's negligence. The trial court denied defendant's motion for summary disposition, holding that the conflicting testimony regarding whether the garbage truck was moving at the time of the incident created a genuine issue of material fact.

## II. MOTOR-VEHICLE EXCEPTION TO GOVERNMENTAL IMMUNITY

Defendant argues that the trial court erred when it declined to grant its motion for summary disposition under MCR 2.116(C)(7) and (10). It contends that

governmental immunity bars plaintiff's claim and that plaintiff did not present evidence sufficient to create a question of fact regarding whether the garbage truck driver, Dingel, negligently operated the garbage truck. We disagree.

In this case, the parties disagree whether the use of the garbage truck falls within the meaning of the phrase "negligent operation" in MCL 691.1405. The parties first dispute a factual question: whether the garbage truck was moving at the time it collided with the school bus. The parties also dispute a legal question: whether the term "operation" requires the truck to have been moving at the time of the collision or whether a stationary vehicle may be operating within the meaning of the statute.

Defendant briefly argues that this Court should not consider Strozier's deposition testimony that the truck moved forward and hit the bus because the statement was based on hearsay and plaintiff did not establish that Strozier testified on the basis of personal knowledge. See MRE 602. We disagree. Strozier's statement shows that her testimony reflected personal knowledge. Throughout her testimony, she consistently referred to what she could "remember" of the events, and plaintiff's counsel consistently asked Strozier what she "remembered." These references show that Strozier testified on the basis of personal knowledge, and defendant's assertions of hearsay are without merit.

Next, we address defendant's legal argument that the garbage truck was not in "operation" for purposes of the governmental-immunity statute because it was stopped at the time of the accident. This issue involves an interesting conundrum that arises when motions for summary disposition are brought under both MCR 2.116(C)(10) and (7). Under MCR 2.116(C)(10), when a

court determines that a genuine issue of material fact exists, it must deny the motion for summary disposition and allow the fact-finder to resolve the disputed issues of fact at a trial. *Dextrom v Wexford Co*, 287 Mich App 406, 430; 789 NW2d 211 (2010). However, as this Court stated in *Dextrom*, "[a] *trial* is not the proper remedial avenue to take in resolving the factual questions under MCR 2.116(C)(7) dealing with governmental immunity." *Id*. at 431. Whether the motor-vehicle exception to governmental immunity applies here is a matter of law, and it is a threshold matter of law at that. *Id*. at 431. When faced with a nearly identical procedural issue, the *Dextrom* Court resolved this dilemma by remanding the case to the trial court for a full evidentiary hearing. We conclude that a remand is unnecessary in this case.

Even if the facts are exactly as asserted by defendant, and the garbage truck was temporarily stopped on the road when the collision occurred, we hold that temporary stops on the road to pick up garbage are included in the meaning of "operation" of a garbage truck and that the motor-vehicle exception to governmental immunity applies. In general, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There are, however, six exceptions to governmental immunity, including the motor-vehicle exception, which allows a private party to maintain an action against a governmental agency for "bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405; see also *Robinson v City of Lansing*, 486 Mich 1, 5-6; 782 NW2d 171 (2010).

Our Supreme Court has defined "operation," in the context of the governmental-immunity statute, to mean " 'an act or instance, process, or manner of functioning or operating.' " *Chandler v Muskegon Co*, 467 Mich 315, 320; 652 NW2d 224 (2002) (citation omitted). In applying this definition, the Court held that "operation" requires that the motor vehicle be operating as a motor vehicle and only "encompasses activities that are directly associated with the driving of a motor vehicle." *Id.* at 321. The Court found this limitation necessary, because to define the term otherwise would allow this exception to apply overbroadly to include virtually any situation in which a motor vehicle injured someone, regardless of the use of the vehicle at the time of the accident. *Id.* Defendant relies on *Chandler* to support its assertion that because the garbage truck was stopped, it could not be in "operation" at the time of the incident. We disagree.

In *Chandler*, the Supreme Court held that the situation of a bus parked at a maintenance garage did not fall within the statutory meaning of "operation." *Chandler*, 467 Mich at 316. While waiting to clean the bus, the plaintiff saw the driver become trapped in the bus doors as the driver attempted to exit it. *Id.* The plaintiff tried to open the doors and injured his shoulder in the process. *Id.* The Court held that because the bus was in maintenance at the time of the injury, and bus maintenance is distinct from bus operation, governmental immunity barred the plaintiff's claim. *Id.* at 316, 320-322.

In *Poppen v Tovey*, 256 Mich App 351, 352, 355-356; 664 NW2d 269 (2003), this Court held that a water truck parked on the curb lane of a two-lane street was not in "operation." The plaintiff in *Poppen* hit the truck while it was parked with its warning lights flashing, as

the city employee in possession of the truck inspected a nearby fire hydrant. *Id.* at 352. This Court held that the truck was not in operation because it was not engaged in an activity " 'directly associated with the driving' of that vehicle." *Id.* at 355-356 (citation omitted). The Court therefore upheld the trial court's grant of summary disposition. *Id.* at 356.

In an order entered by our Supreme Court, in *Martin v Rapid Inter-Urban Partnership*, 480 Mich 936 (2007), the Court stated that "[t]he loading and unloading of passengers is an action within the 'operation' of a shuttle bus." The Court provided no further facts and provided no analysis regarding why the exception applied, even though the bus was apparently not moving. *Id.* Justice CORRIGAN provided further facts in her dissent, indicating that the plaintiff claimed that the defendant's failure to install a heater to thaw the steps or to properly scrape the steps had caused the plaintiff to fall on an icy step. *Id.* at 936 (CORRIGAN, J., dissenting). She further noted that the majority's order seemed to confuse the Court's previous definition of the term "operation," which had explicitly excluded bus "maintenance." *Id.* at 936-937. In her view, the Court should have granted leave to fully discuss the implication of the majority's opinion that " 'operation' means something more than driving" and answer the question: "What precisely *does* 'operation' mean?" *Id.* at 937.

This case is factually similar to *Martin* and distinct from *Chandler* and *Poppen*. In *Poppen*, the defendant parked the truck on the road, with its hazard lights on, for about five minutes, in a way that indicated it was not currently in use as a vehicle. Similarly, in *Chandler*, the bus was parked in a maintenance garage as the driver got out of the vehicle, indicating that use of the

bus as a vehicle had ended. In this case, even if the garbage truck was stopped, it was stopped because it was carrying out its intended function of picking up garbage. As it is impossible for a garbage truck to perform the function for which it was designed without periodically stopping to pick up garbage, we conclude that stopping to pick up garbage is necessarily included within the "operation" of a garbage truck. Therefore, summary disposition under MCR 2.116(C)(7) was not warranted because the motor-vehicle exception to governmental immunity would apply regardless of whether the facts are as plaintiff contends or as defendant contends.

Affirmed.

MURPHY, C.J., and JANSEN and OWENS, JJ., concurred.