# STATE OF MICHIGAN

# COURT OF APPEALS

LOGAN SCHAUB, by Next Friend MICHAEL
SCHAUB,

        Plaintiff-Appellee/Cross-Appellant,

v

JAMES ALBERT SEYLER,

        Defendant/Cross-Appellee,

and

RYANN ELISE HERMAN and TRAVERSE
CITY AREA PUBLIC SCHOOLS,

        Defendants-Appellants.

UNPUBLISHED
November 15, 2018

No. 340993
Grand Traverse Circuit Court
LC No. 2017-031989-NI

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, then a 14-year-old 9th grade student, was injured when struck by a vehicle as he was crossing the street to his school bus. Defendant RyAnn Elise Herman, an alternate bus driver employed by Traverse City Area Public Schools (TCAPS), who had never driven plaintiff's route before, had missed plaintiff's stop. Herman turned the bus around and missed plaintiff's stop again. Herman stopped the bus a short distance away on the opposite side of the road. Plaintiff attempted to cross the street in order to board the bus, and he was struck by a vehicle being driven by defendant James Albert Seyler. Plaintiff brought a claim against Herman for negligent operation of a government-owned vehicle and gross negligence, against TCAPS for statutory liability under MCL 691.1405 and ownership liability under MCL 257.401, and against Seyler for negligence.

Herman and TCAPS filed a motion for summary disposition under MCR 2.116(C)(7) (immunity granted by law), (8) (failure to state a claim on which relief can be granted), and (10) (no genuine issue of material fact). Seyler filed a separate motion for summary disposition under MCR 2.116(C)(8) and (10). The trial court denied Herman's and TCAPS's motion to the extent that it sought dismissal of plaintiff's claims of gross negligence against Herman and statutory liability against TCAPS under MCL 691.1405, and it granted summary disposition on the

-1-

remaining two claims against Herman and TCAPS. In a separate order, the trial court granted Seyler's motion for summary disposition.

Herman and TCAPS appeal as of right the trial court's order to the extent that it partially denied their motion for summary disposition. Plaintiff cross-appeals the trial court's grant of summary disposition in favor of Seyler. We reverse those portions of the trial court's order denying summary disposition to Herman and TCAPS. We also affirm the grant of summary disposition in favor of Seyler. We remand this case for entry of summary disposition in favor of defendants on all counts.

## I. FACTS

On the morning of October 11, 2016, plaintiff was injured after he was struck by Seyler's car. That morning, he wore a black sweatshirt with a large reflective logo on its front, a black hat, and black sweatpants with white stripes running down the pant legs. He also wore a pair of grey and red shoes, carried a black backpack, and sported a pair of black headphones. There was some limited natural light that morning, enough to "see your hand in front of your face," according to plaintiff.

The bus was driven by Herman, an alternate bus driver employed by TCAPS who had never driven plaintiff's route before the day of the accident and testified that she did not have time to study the route before departing to pick up students. Herman failed to stop in front of plaintiff's house at the normal stop. After a student made Herman aware of her mistake, Herman turned the bus around. According to Herman, it was her intent to continue past plaintiff's stop again in order to turn the bus around a second time so that she could load plaintiff on the appropriate side of the road.

An unidentified student offered Herman assistance in locating plaintiff's stop. On the bus's interior video, the student warned Herman that they were approaching plaintiff's stop, and approximately 19 seconds later, Herman brought the bus to a halt, sitting approximately halfway into the travel portion of the highway and halfway into the gravel shoulder of the road. Plaintiff's mother, Nicole Anderson, explained that when the bus stopped, it stopped across the street and just to the left of plaintiff's usual bus stop. Herman indicated that she pulled over only to determine how to go about executing a proper stop to load plaintiff onto the bus.

Herman activated her turn signal, and cars began to pass around the bus. Video footage taken from the bus revealed that after two of them had passed, someone—a student or Herman— noted that plaintiff was "walking down," although it is unclear whether this meant that plaintiff was walking into the roadway or moving to position himself in front of the bus. In an affidavit submitted to the trial court, a student passenger on the bus at the time of the accident testified that "[i]t was clear to [her] that the bus driver was waiting for [plaintiff] and he was going to cross the road to get on the bus," and that it was "also clear that the bus driver was not going to pull back around to [plaintiff's] actual stop."

There was conflicting testimony regarding whether the bus's external lights were activated prior to the accident. Plaintiff stated that he never saw any lights illuminated on the bus other than brake lights. Herman initially stated that only the bus's turn signal and headlights

were activated. Seyler indicated that no external lights were activated on the bus except for the turn signal, adding that the bus's internal lights were also inactive. Video footage taken from the front external view of the bus showed that approximately 12 seconds after the student notified Herman that plaintiff was "walking down," the bus's flashing amber lights were activated. McNeil testified that he and Seyler saw the flashing lights from a short distance behind the bus. Around 57 seconds later, the bus's flashing amber lights were deactivated. Melissa Orth, who was traveling immediately in front of Seyler, testified that the bus's flashing amber lights were activated just before Herman pulled over to allow traffic to pass, and were deactivated once the bus came to a complete stop. Herman stated that this was not a signal for plaintiff to attempt to board the bus, but a signal to oncoming traffic to proceed with caution.

A student let Herman know that plaintiff was approaching, but she did not activate her flashing lights, because to do so would have been unlawful according to the training she received at TCAPS. Herman explained that activating the flashing lights while stopped would not give other drivers adequate notice that the bus was loading a student.

A student on the bus called out to plaintiff that the bus was meant for him, and plaintiff testified that children on the bus were beckoning for him to board. Plaintiff looked both ways down the road and, to the extent that he could remember, he did not notice any oncoming traffic. He began to cross the street. In total, eight vehicles went around the bus before the accident. While Herman stated that plaintiff was not running, video surveillance taken from the rear interior of the bus clearly showed that plaintiff was running across the road. Additionally, Orth testified that when she glanced in her rearview mirror, she saw a student running in front of Seyler's truck.

Seyler, the ninth vehicle to navigate around the bus, attempted to go around the bus. His headlights were illuminated and he proceeded within the posted speed limit. Even so, although Seyler checked for pedestrians, he did not see plaintiff. Plaintiff was situated somewhere in the roadway to the side of the bus when he was struck by Seyler's vehicle. The student who submitted an affidavit on plaintiff's behalf testified that she could hear Seyler's vehicle accelerate just before the collision. Herman and McNeil believed that they heard the squeal of Seyler's brakes being applied just before the impact, but Seyler stated that he did not apply his brakes.

Plaintiff was thrown onto the hood of Seyler's car and carried to a location off to the side of the road. At that point, Herman activated the flashing amber and flashing red lights and immediately notified dispatch of the accident. Approximately one minute later in the video footage of the incident, Herman can be heard stating, "I didn't—I had no idea he was going to cross. I thought that car was going to go and then he was going to cross."

After the accident, an investigating deputy took a statement from Herman in which she informed the deputy that it was her intent to "activate her emergency lights, reenter the roadway, and back the short distance up back to his bus stop." The deputy issued plaintiff a verbal warning for failing to yield to the vehicular right of way when crossing the road, but issued no traffic citations to Herman or Seyler.

Plaintiff, by his father and next friend, Michael Schaub, filed this cause of action against defendants, alleging five separate counts against defendants: (1) negligent operation of a government-owned vehicle against Herman; (2) gross negligence against Herman; (3) statutory liability against TCAPS under MCL 691.1405; (4) ownership liability against TCAPS under MCL 257.401; and (5) negligence against Seyler.

Herman and TCAPS filed a motion for summary disposition under MCR 2.116(C)(7), (8), and (10). Seyler filed a separate motion for summary disposition under MCR 2.116(C)(8) and (10). The trial court denied summary disposition of plaintiff's claim of gross negligence against Herman, holding that reasonable minds could differ on the questions of (1) whether Herman was grossly negligent; and (2) whether such gross negligence was the proximate cause of plaintiff's injuries. The trial court also denied summary disposition of plaintiff's claim of statutory liability under MCL 691.1405 against TCAPS, holding that the bus was "running and engaged in the ongoing process of collecting students to take them to school," and was therefore "operating" under the statute regardless of whether it was moving at the time of the impact or whether it contacted plaintiff. The trial court further held that genuine issues of material fact remained as to whether Herman negligently operated the bus and whether plaintiff's injuries resulted from such negligent operation. The trial court granted summary disposition of plaintiff's other claims against Herman and TCAPS. Considering the claim of negligence against Seyler, the trial court analogized the facts in this case to those in *Huggins v Scripter*, 469 Mich 898, 669 NW2d 813 (2003), concluding that plaintiff was more negligent than Seyler because plaintiff ran across a dark road while wearing dark clothing, Seyler was traveling within the speed limit with his eyes on the road, and the deputy issued plaintiff a citation but not Seyler.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). A motion for summary disposition under MCR 2.116(C)(7) may be raised on the ground that a claim is barred because of immunity granted by law. In support of a motion under subrule (C)(7), a party may provide affidavits, pleadings, depositions, admissions, and other documentary evidence. MCR 2.116(G)(5). Unlike a motion brought under subrule (C)(10), "a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). However, if provided, the substance of this material must be admissible in evidence. *Id*. When reviewing motions under subrule (C)(7),

> this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom*, 287 Mich App at 429 (citations omitted).]

"[O]nly factual allegations, not legal conclusions, are taken as true under MCR 2.116(C)(7) and (8)." *Davis v Detroit*, 269 Mich App 376, 379 n 1; 711 NW2d 462 (2005).

Motions under MCR 2.116(C)(8) test the legal sufficiency of the complaint. *Maiden*, 461 Mich at 119. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (citations and quotation marks omitted). When considering motions under subrule (C)(8), a court only examines the pleadings. MCR 2.116(G)(5).

Under MCR 2.116(C)(10), summary disposition may be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Maiden*, 461 Mich at 120. "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom*, 287 Mich App at 416. When evaluating motions brought under subrule (C)(10), a trial court must consider—in the light most favorable to the nonmoving party—the parties' affidavits, pleadings, depositions, admissions, and other documentary evidence. *Id*., citing MCR 2.116(G)(5). Such evidence is required when disposition is sought pursuant to subrule (C)(10). MCR 2.116(G)(3)(b). Motions under subrule (C)(10) "must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The nonmoving party may not rest upon its pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. If the nonmoving party fails to do so, the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich at 120. The Court may not resolve factual disputes or weigh credibility when deciding a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

Further, "[t]he applicability of governmental immunity is a question of law that is reviewed de novo." *Ray v Swager*, 501 Mich 52, 61; 903 NW2d 366 (2017). Issues of statutory construction are reviewed de novo as well. *Chandler v Muskegon Co*, 467 Mich 315, 319; 652 NW2d 224 (2002).

## III. ANALYSIS

### A. GROSS NEGLIGENCE

TCAPS and Herman first argue that the trial court erred when it denied summary disposition of plaintiff's claim of gross negligence against Herman because plaintiff failed to create a genuine issue of material fact whether Herman's conduct was "so reckless as to demonstrate a substantial lack of concern for whether an injury results." See MCL 691.1407(8)(a). We agree.

Under MCL 691.1407(1) of the governmental tort liability act (GTLA), "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Likewise, an employee of a governmental agency is also immune from tort liability for injuries to persons that occur in the course of the governmental employee's employment or service on behalf of the agency so long as:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2)(a) through (c).]

Gross negligence, in this context, "means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). It requires conduct that is " 'substantially more than negligent.' " *Bellinger v Kram*, 319 Mich App 653, 659-660; 904 NW2d 870 (2017), quoting *Maiden*, 461 Mich at 122. Stated another way, gross negligence may be characterized by " 'a willful disregard of safety measures and a singular disregard for substantial risks.' " *Bellinger*, 319 Mich App at 660, quoting *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010). Typically, allegations of inaction or claims that a defendant could have taken additional precautions do not establish gross negligence. *Bellinger*, 319 Mich App at 660

Herman owed plaintiff a duty as a school bus driver transporting student passengers. "Unquestionably, there is a legal relationship between a school bus driver and a passenger/student such that the law imposes a legal obligation on the driver for the benefit of the passenger." *Nolan v Bronson*, 185 Mich App 163, 170; 460 NW2d 284 (1990), overruled on other grounds by *Chandler*, 467 Mich at 319-322. "The duty of care required of a school bus driver for the benefit of a passenger is the care a reasonable person would exercise under the circumstances." *Nolan*, 185 Mich App at 175. MCL 257.1855(2)(b) provides the proper procedure for loading a student onto a school bus when the student is required to cross the street to board the bus:

If the pupils are required to cross the roadway, the driver of a school bus equipped with red and amber alternately flashing overhead . . . shall activate the alternately flashing overhead amber lights not less than 200 feet before the stop, stop the bus on the roadway or private road to provide for the safety of the pupils being boarded or discharged, deactivate the alternately flashing overhead amber lights, and activate the alternately flashing overhead red lights while receiving or discharging pupils. The bus shall stop in the extreme right-hand lane for the purpose of boarding or discharging pupils. Before resuming motion, the driver shall deactivate these lights and allow congested traffic to disperse where practicable. The deactivation of these lights is the signal for stopped traffic to proceed.

The problem with an argument establishing a breach of duty under this procedure is that there is no evidence to support the necessary predicate to the duty—that plaintiff was required to cross the roadway. Not only did Herman state that she was not anticipating that plaintiff would cross the road at that point and she was waiting to be able to turn the bus around and pick him up on his side of the road, but there is no evidence that she instructed plaintiff to cross. That is, an

argument for gross negligence could be made had Herman, without properly activating her lights, instructed plaintiff to cross. But the evidence does not support such a conclusion. At best, the evidence might suggest that, contrary to Herman's position now, she was stopped at the side of the road not waiting for the opportunity to turn around, but considering whether to turn around or instruct plaintiff to cross. But, before she did either, a student on the bus encouraged plaintiff to cross without being instructed by Herman to do so, which plaintiff did.

Plaintiff contends that Herman was grossly negligent because she should have activated the bus's flashing red lights in order to control the flow of traffic once she became aware that plaintiff was crossing the street. Evidence was presented that Herman was eventually made aware that plaintiff was crossing the street before the accident. Nevertheless, plaintiff's argument does not account for the increased potential for other accidents and injuries that might have resulted from a decision to do so. Or, for that matter, after reviewing the video, it is not clear there was sufficient time for Herman to react and activate the lights after discovering that plaintiff was crossing without being directed to do so. We reject plaintiff's assertion that, under the unique facts of this case, failing to activate the bus's red crossing lights rendered Herman grossly negligent.

## B. THE MOTOR VEHICLE EXCEPTION TO GOVERNMENTAL IMMUNITY

Herman and TCAPS next argue that plaintiff failed to establish a genuine issue of material fact as to whether the bus was "operating" as a motor vehicle sufficient to invoke the motor vehicle exception to governmental immunity. We disagree with this particular point, but do agree that the motor vehicle exception does not apply in this case.

Pursuant to MCL 691.1405, "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." This is known as the motor vehicle exception to governmental tort liability. *Strozier v Flint Community Sch*, 295 Mich App 82, 88; 811 NW2d 59 (2011). Michigan courts have grappled with the proper interpretation of the word "operation" in this context, as the Legislature did not offer a statutory definition of the term. In *Martin v Rapid Inter-Urban Transit Partnership*, 480 Mich 936, 936; 740 NW2d 657 (2007), the Michigan Supreme Court held that "[t]he loading and unloading of passengers is an action within the 'operation' of a shuttle bus." *Id*. Nevertheless, an injury does not "result[] from" the negligent operation of a government-owned vehicle under MCL 691.1405 unless the government-owned vehicle makes direct physical contact with the plaintiff in some capacity. *Curtis v Flint*, 253 Mich App 555, 561; 655 NW2d 791 (2002); *Robinson v Detroit*, 462 Mich 439, 456-457; 613 NW2d 307 (2000).

In this case, the loading of passengers "is an action within the 'operation' of a . . . bus." See *Martin*, 480 Mich at 936. However, plaintiff has never offered any evidence to suggest that the bus physically contacted him or Seyler's vehicle. Accordingly, plaintiff has failed to establish a genuine issue of material fact regarding whether he could invoke the motor vehicle exception to governmental tort liability. See *Helfer v Ctr Line Pub Sch*, 477 Mich 931, 931; 723 NW2d 459 (2006).

D.  COMPARATIVE FAULT

Plaintiff, in his brief on cross-appeal, argues that the trial court erred when it held that plaintiff's claim of negligence against Seyler was barred by the doctrine of comparative fault because the trial court failed to analyze the involvement of all pertinent actors.  We disagree.

Plaintiff is correct that the doctrine of comparative fault requires an analysis of all the pertinent actors' fault.  MCL 500.3135(2)(b) provides that in cases involving motor vehicle accidents, "damages shall not be assessed in favor of a party who is more than 50% at fault." Under MCL 600.6304(1)(b) and (2):

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
>
> * * *
>
> > (b) The percentage of the total fault of all persons that contributed to the death or injury . . . , regardless of whether the person was or could have been named as a party to the action.
>
> (2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

"The doctrine of comparative fault requires that every actor exercise reasonable care." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008).  Several Michigan statutes work in conjunction "to allocate liability according to the relative fault of *all persons* contributing to the accrual of a plaintiff's damages." *Lamp v Reynolds*, 249 Mich App 591, 596; 645 NW2d 311 (2002) (emphasis added).  Because the trial court concluded that Herman was potentially negligent, the trial court erred in comparing plaintiff's fault only to Seyler's, when it should have also accounted for the amount of fault attributable to Herman's conduct  But this error becomes harmless with our conclusion that summary disposition should have been granted in favor of both TCAPS and Herman.  That is, in light of our conclusion, the parties to compare under the comparative negligence analysis are plaintiff and Seyler.  And, because the trial concluded there was no dispute that plaintiff was more negligent than Seyler, it necessarily follows that the trial court would conclude that, if only plaintiff's and Seyler's negligence are to be compared, plaintiff would necessarily have to have been more than 50% at

fault. Accordingly, even though the trial court's analysis was somewhat faulty in light of its other decisions, ultimately it can be affirmed.[1]

In light of our conclusions on these issues, we need not address the remaining issues presented in this case.

We reverse the portion of the trial court's order denying summary disposition with respect to plaintiff's claim of gross negligence against Herman, reverse the portion of the trial court's order denying summary disposition of plaintiff's claim of statutory liability against TCAPS under the motor vehicle exception to governmental immunity, and affirm the trial court's order granting Seyler's motion for summary disposition. We remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendants may tax costs.

/s/ David H. Sawyer
/s/ Brock A. Swartzle

---

[1] It should be noted that we are not necessarily concluding that the evidence supports a conclusion of any negligence by Seyler. We only conclude that, even if Seyler was at all negligent, under the trial court's analysis plaintiff still had to have been more than 50% at fault.