CURTIS v CITY OF FLINT

Docket No. 233576. Submitted September 5, 2002, at Detroit. Decided
     October 25, 2002, at 9:10 A.M.

     Thomas M. Curtis brought an action in the Genesee Circuit Court
     against the city of Flint and Flint Fire Department paramedic Pat-
     rick Lawson, alleging liability by the city for bodily injury resulting
     from the negligent operation of a Flint Fire Department paramedic
     vehicle and liability by Lawson for his grossly negligent operation
     of the vehicle while responding to an emergency. The plaintiff had
     crashed his vehicle into the rear of a vehicle driven by Jonathan
     Kells after Kells stopped his vehicle and waved Lawson through an
     intersection whose traffic light was red for Lawson's vehicle and
     green for the vehicles of the plaintiff and Kells. The defendants
     moved for summary disposition, arguing that the action was barred
     by governmental immunity, that the plaintiff failed to state a claim
     on which relief can be granted, and that there was no genuine issue
     regarding any material fact and the defendants were entitled to
     judgment as a matter of law. The court, Judith A. Fullerton,
     J.–relying on *Robinson v Detroit*, 462 Mich 439 (2000), in which the
     Supreme Court narrowly construed the motor vehicle exception to
     governmental immunity in the context of a case involving a police
     pursuit to hold that the exception will not apply unless there is
     physical contact between the police vehicle and that of the plain-
     tiff, or the police vehicle physically forced the plaintiff's vehicle off
     the road or into another vehicle or object—granted summary dispo-
     sition for the defendants. The plaintiff appealed.

     The Court of Appeals *held*:

     1. Because the trial court dismissed the plaintiff's claims on the
     basis of governmental immunity, the trial court's ruling is reviewed
     as having been granted under MCR 2.116(C)(7).

     2. There is nothing in the analysis employed in *Robinson* to sug-
     gest that its holding is limited to cases involving police pursuit of a
     fleeing vehicle. The trial court correctly read *Robinson* to require
     that the emergency vehicle at issue in this case be physically
     involved in the collision that caused the plaintiff's injuries, either
     by hitting the plaintiff's vehicle or by physically forcing that vehicle
     off the road or into another vehicle or object, in order for the

motor vehicle exception to apply. There being no evidence of such involvement, the trial court correctly ruled that the plaintiff's claims against the city are barred by governmental immunity.

3. The trial court correctly applied *Robinson* to dismiss the plaintiff's claims against Lawson. A government employee may be liable for grossly negligent conduct if that conduct is the proximate cause of the injury or damage. In *Robinson*, the Supreme Court held that "the proximate cause" is not synonymous with "a proximate cause," and that to impose liability on a government employee for gross negligence, the employee's conduct must be the one most immediate, efficient, and direct cause preceding an injury. As with the *Robinson* Court's holding regarding the motor vehicle exception, there is no indication that its holding regarding the proximate cause necessary to impose tort liability on a government employee applies only to cases involving police chases. Here, summary disposition of the plaintiff's claims against Lawson was required under *Robinson* because the most immediate, efficient, and direct cause of the plaintiff's injuries was Kells' abrupt moving and stopping of his vehicle.

4. *Robinson* applies retroactively to this case. Prospective application is generally limited to those decisions that overrule clear and settled precedent. *Robinson* is not such a decision.

Affirmed.

FITZGERALD, P.J., concurring, would affirm for the different reason that the plaintiff failed to create an issue of fact with regard to whether Lawson was negligent in his operation of the emergency vehicle, given that Lawson and Kells testified that Lawson was not negligent. Affirmance on this ground avoids having to decide whether *Robinson* can be applied retroactively.

1. GOVERNMENTAL IMMUNITY — MOTOR VEHICLE EXCEPTION.

The motor vehicle exception to governmental immunity does not apply in an accident involving a plaintiff's vehicle and a government-owned vehicle unless there is physical contact between the government-owned vehicle and the plaintiff's vehicle, or the government-owned vehicle physically forced the plaintiff's vehicle off the road or into another vehicle or object (MCL 691.1405).

2. GOVERNMENTAL IMMUNITY — GOVERNMENT EMPLOYEES — GROSS NEGLIGENCE — PROXIMATE CAUSE.

Imposition of liability on a government employee for injury caused by gross negligence requires that the employee's conduct be the one most immediate, efficient, and direct cause preceding the injury (MCL 691.1407[2][c]).

*Michael J. Kelly* for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Mary Massaron Ross*), for the defendants.

Before: FITZGERALD, P.J., and BANDSTRA and GAGE, JJ.

BANDSTRA, J. In this action alleging governmental agency and employee liability for negligent operation of an emergency medical vehicle, plaintiff asserts that the trial court erred in granting summary disposition in favor of defendants on the basis of *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). Plaintiff argues that *Robinson*, which involved governmental agency and employee liability for injuries stemming from a police chase, is factually distinguishable from the present case. Plaintiff further argues that, even if applicable on the facts presented here, *Robinson* should only be applied prospectively and, therefore, should have no effect on this case. We disagree and affirm the trial court's grant of summary disposition in favor of defendants.

On June 18, 1999, Jonathan Kells was traveling south on Hammerberg Road in Genesee County when he observed a city of Flint Fire Department paramedic unit approaching Hammerberg Road from the exit ramp of westbound I-69. Noting that the paramedic unit was operating in an emergency capacity, Kells abruptly moved his vehicle to the curb lane and stopped in order to allow the paramedic unit onto Hammerberg Road against a red traffic signal. After stopping, Kells was struck from behind by plaintiff, who had been traveling in the curb lane only a short distance behind Kells' vehicle. Plaintiff suffered severe injuries as a result of the collision with Kells.

Although it is disputed whether the driver of the paramedic vehicle, Flint fire fighter and paramedic Patrick Lawson, followed standard emergency vehicle protocol in approaching and entering the intersection, it is undisputed that the emergency vehicle being driven by Lawson was not physically involved in the collision between plaintiff and Kells.

In April 2000, plaintiff filed this lawsuit against both Lawson and the city of Flint, alleging that Lawson's gross negligence in operating the city's emergency vehicle was a proximate cause of the accident. Before trial, defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). After oral argument on defendants' motion, the trial court granted summary disposition in favor of defendants, relying primarily on our Supreme Court's interpretation of the statutory immunity afforded governmental agencies and their employees in *Robinson, supra*. This appeal ensued.

Because the trial court dismissed plaintiff's claims on the basis of statutory governmental immunity, we review the motion as granted under MCR 2.116(C)(7). An order granting summary disposition under MCR 2.116(C)(7) is reviewed de novo on appeal. *Pusakulich v Ironwood*, 247 Mich App 80, 82-83; 635 NW2d 323 (2001). In reviewing the order, we must give consideration to the affidavits, depositions, admissions, and other documentary evidence filed by the parties, and determine whether they indicate that defendants are in fact entitled to immunity. *Id.*

As a general rule, a governmental agency is immune from tort liability when it is engaged in the

exercise or discharge of a governmental function.[1] MCL 691.1407(1). However, a governmental agency is liable for bodily injury "resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle" owned by the governmental agency. MCL 691.1405.

In *Robinson, supra,* the Supreme Court addressed this motor vehicle exception in the context of injuries suffered during a police chase. The Court held that the "resulting from" language of the statute required proof that the pursuing police vehicle hit the fleeing vehicle or otherwise physically forced it off the road or into another vehicle or object. *Id.* at 457. In so holding, the Court overruled *Fiser v Ann Arbor*, 417 Mich 461; 339 NW2d 413 (1983), which had employed a broad reading of the motor vehicle exception to conclude that the excessive speed of a fleeing vehicle "resulted from" the police pursuit, and that it was this high speed that caused the fleeing driver to lose control and collide with the plaintiff's vehicle. *Id.* at 475.

Noting that *Robinson* and *Fiser* both involved injuries stemming from police pursuit of a fleeing vehicle, plaintiff here argues that the *Robinson* Court's holding that the motor vehicle exception requires some form of physical involvement by the government-owned vehicle is limited to cases involving damage or injury stemming from a police chase and, therefore, does not apply under the facts of this case. For the reasons that follow, we disagree.

---

[1] Our Supreme Court recently recognized that the operation of a fire department, including the provision of emergency medical services, is clearly a governmental function. See *Omelenchuk v Warren*, 466 Mich 524; 647 NW2d 493 (2002).

In deciding *Robinson*, the Court began by noting the well-settled principle that the grant of immunity afforded governmental agencies in MCL 691.1407(1) is broad, and that the statutory exceptions to that immunity are to be narrowly construed. *Robinson, supra* at 455. With that in mind, the Court went on to construe the motor vehicle exception to governmental immunity in the context of the claims brought against the city of Detroit. The plaintiffs in that case alleged that the city, through the conduct of its police officers, was negligent in failing to operate its police vehicles in a manner that would avoid placing the general public in danger. *Id.* at 456. The Court found it significant, however, that within these allegations the plaintiffs did not assert that the city-owned vehicle had itself hit the fleeing vehicle or otherwise physically forced that vehicle off the road or into another vehicle or object, and held:

> Given the fact that the motor vehicle exception must be narrowly construed, we conclude that plaintiffs cannot satisfy the "resulting from" language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object. [*Id.* at 456-457.]

In so holding, the majority emphasized that a narrow reading of the phrase "resulting from," as used in MCL 691.1405, requires a more direct causal connection than the proximate cause "but for" analysis generally employed in cases alleging liability based on negligent conduct:

> The dissent suggests that there should be liability where a police vehicle forces an innocent intervening car to hit the fleeing vehicle causing injury to an innocent person in

> the fleeing vehicle. However, we do not believe such a sce-
> nario would fit within a narrow reading of the statutory
> requirement of "resulting from." The dissent's position
> would be more in accord with a proximate cause "but for"
> analysis. However, the statute does not say that governmen-
> tal agencies are liable for injuries or property damage
> "proximately caused" by the negligent operation of a motor
> vehicle. Rather, the statute says the injuries or property
> damage must result from the negligent operation of a motor
> vehicle. Because the Legislature did not utilize proximate
> cause language, we will not import such analysis here.
> [*Robinson, supra* at 457, n 14.]

While there is no question that the facts of *Robin-
son* involved a police chase, or that the Court refer-
enced those facts as well as the facts of other similar
cases at several points in its opinion, there is nothing
in the analysis employed in *Robinson* to suggest that
its holding is to be limited to cases involving police
pursuit of a fleeing vehicle. Although other aspects of
the Court's opinion hinged on policy considerations
exclusive to police pursuits, i.e., whether the police
owe a duty to passengers in a fleeing vehicle, see *id.*
at 450-453, the holding of the Court on the question at
issue here is broader. Because the statute allows lia-
bility only for injuries "resulting from" the negligent
operation of a government-owned vehicle, as opposed
to a lesser "but for" standard, the motor vehicle
exception will not apply unless there is physical con-
tact between the government-owned vehicle and that
of the plaintiff, or the government-owned vehicle
physically forced the plaintiff's vehicle off the road or
into another vehicle or object. This interpretation of
the language used by the Legislature in drafting the
motor vehicle exception is not limited to police
chases. Under the narrow reading given the exception

by the Court in *Robinson*, the nature of the governmental vehicle's use is immaterial.

Accordingly, we conclude that the trial court correctly read *Robinson* to require that the emergency vehicle at issue here be physically involved in the collision that caused plaintiff's injuries, either by hitting plaintiff's vehicle or by physically forcing that vehicle off the road or into another vehicle or object. There was no evidence of such involvement in this case. Even when viewed in a light most favorable to plaintiff, the evidence indicates that Kells moved his vehicle into plaintiff's lane and stopped, not because he was physically forced to do so by Lawson, but because he wished to leave the intersection open for the approaching emergency vehicle. Moreover, even assuming that Kells was forced to stop in order to avoid colliding with the paramedic unit, there is nothing in the evidence offered below to indicate that Kells was required to enter plaintiff's lane in order to do so. In other words, Kells' decision to abruptly change lanes and stop was one of many options available to him; it was not physically required by the alleged negligent operation of the emergency vehicle. Cf. *Regan v Washtenaw Co Bd of Co Rd Comm'rs*, 249 Mich App 153, 161; 641 NW2d 285 (2002) (operation of a county vehicle caused the plaintiff's vehicle to swerve and ultimately collide with the county vehicle). Summary disposition of plaintiff's claims against the city was proper.

Moreover, although not specifically challenged by defendant Lawson on appeal, we similarly conclude that the trial court correctly applied *Robinson* to dismiss plaintiff's claims against defendant Lawson. Pursuant to MCL 691.1407(2), a governmental employee

may be liable for grossly negligent conduct if that conduct is "the proximate cause of the injury or damage." MCL 691.1407(2)(c). In *Robinson, supra* at 458-459, 462, the Court held that the phrase "the proximate cause," as used in MCL 691.1407(2)(c), is not synonymous with "a proximate cause," and that to impose liability on a governmental employee for gross negligence, the employee's conduct must be "the one most immediate, efficient, and direct cause preceding an injury." As with the Court's holding regarding the motor vehicle exception, there is no indication that its holding regarding the proximate cause necessary to impose tort liability on a governmental employee applies only to cases involving police chases:

> As to [MCL 691.1407(2)](c), in *Dedes* [*v Asch*, 446 Mich 99, 107; 521 NW2d 488 (1994)], this Court effectively interpreted "the proximate cause" in subsection (c) to mean "a proximate cause." The Court further explained that "the" proximate cause does not mean "sole" proximate cause. *Id.* We overrule *Dedes* to the extent that it interpreted the phrase "the proximate cause" in subdivision (c) to mean "a proximate cause." The Legislature's use of the definite article "the" clearly evinces an intent to focus on one cause. The phrase "the proximate cause" is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury. [*Id.* at 458-459.]

On the record before us, the most immediate, efficient, and direct cause of plaintiff's injuries was Kells' abrupt movement and stopping of his vehicle. Accordingly, summary disposition of plaintiff's claims against Lawson was required under *Robinson, supra.*

Plaintiff also argues *Robinson* should not be applied retroactively, and therefore, should have no effect on this case. Again, we disagree. Whether the

decision in *Robinson* should be applied retroactively
or prospectively is a question of law that we review
de novo. *Sturak v Ozomaro*, 238 Mich App 549, 559;
606 NW2d 411 (1999).

Generally, judicial decisions are applied retro-
actively. *Lincoln v Gen Motors Corp*, 461 Mich 483,
491; 607 NW2d 73 (2000). Only where a decision is
"unexpected" or "indefensible" in light of the law
existing at the time that the underlying facts devel-
oped is there a question about whether to afford the
decision complete retroactivity. *MEEMIC v Morris*,
460 Mich 180, 195; 596 NW2d 142 (1999). Thus, pro-
spective application is generally limited to those deci-
sions that overrule clear and settled precedent. *Id.* at
189.

Initially, we note that by applying its holdings to
the plaintiffs in the case before it, the *Robinson* Court
has already indicated that the decision is to be
applied retroactively. In support of this conclusion,
we further note that the Court has since remanded at
least one case to this Court for reconsideration in
light of *Robinson*. See *Nazario v Hull*, 463 Mich 980
(2001). Also, in *Regan, supra* at 160-162, our Court
applied the *Robinson* "resulting from" analysis with-
out any suggestion that the decision might only be
applied prospectively. Even apart from those facts,
we find that the Court's decision in *Robinson* does
not meet the threshold criterion for prospective appli-
cation because it did not overrule clear and settled
precedent.

In arguing against retroactive application, plaintiff
relies on *Tebo v Havlik*, 418 Mich 350; 343 NW2d 181
(1984), where our Supreme Court declined to apply
retroactively its decision in *Putney v Haskins*, 414

Mich 181; 324 NW2d 729 (1982). However, the precedent relied on by the plaintiffs in *Tebo* was "unquestioned" at the time the plaintiffs took action in reliance on that precedent. See *Tebo, supra* at 362-363. Here, however, the viability of the prior interpretations of MCL 691.1405 and MCL 601.1407(2), both at the time of plaintiff's accident and at the time plaintiff filed suit, was questionable.

With respect to MCL 691.1405, the broad construction of the statutory exceptions to governmental immunity employed in *Fiser* became suspect when the Court issued *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). As the *Robinson* Court observed:

> . . . *Fiser* was decided before this Court's seminal governmental immunity opinion in [*Ross*] where we held that statutory exceptions to governmental immunity are to be narrowly construed. Previously, of course, this Court had given the exceptions broad readings. . . . *Fiser* may have been proper when decided, but it is no longer "good law" after *Ross*. [*Robinson, supra* at 455.]

Thus, after the decision in *Ross*, the law governing application of the motor vehicle exception became unsettled, as indicated by this Court's reluctance on several occasions to apply the precedent established in *Fiser*, but for its precedential value. See *id.* at 450, n 9, citing *Frohman v Detroit*, 181 Mich App 400, 413-415; 450 NW2d (1989), *Ewing v Detroit (On Remand)*, 214 Mich App 495, 499-500; 543 NW2d 1 (1995), and *Cooper v Wade*, 218 Mich App 649, 663; 554 NW2d 919 (1996).

Moreover, with respect to MCL 691.1407(2), in overruling the *Dedes* Court's interpretation of MCL 691.1407(2)(c) the *Robinson* Court noted that *Dedes*

"misconstrued a plainly worded statute." *Robinson,
supra* at 465. It can hardly be considered "unex-
pected" or "indefensible" that the Court would
reverse a decision that was contrary to the clear and
unambiguous language of the statute. Indeed, in July
1999, the Court itself issued an order announcing its
intent to revisit and potentially overrule its decisions
in *Fiser* and *Dedes,* thereby foreshadowing their ulti-
mate demise. See *Robinson v Detroit,* 461 Mich 1201
(1999).

Thus, we agree with Judge KELLY's dissent in *Ewing
v Detroit,* 252 Mich App 149; 651 NW2d 780 (2002),
that "it cannot be seriously maintained that the prece-
dent established by [these cases interpreting the stat-
utory grant of and exceptions to governmental immu-
nity] was clear and uncontroverted, . . . to such an
extent that our Supreme Court's decision in *Robinson*
had the effect of 'changing the law' in this area." *Id.*
at 181, citing *MEEMIC, supra* at 191.[2] As observed by
the Court in *Robinson:*

> [T]he lawmaking power is reposed in the people as
> reflected in the work of the Legislature, and, absent a con-
> stitutional violation, the courts have no legitimacy in over-
> ruling or nullifying the people's representatives. . . .
>
> *       *       *
>
> We *return the law,* as is our duty, to what we believe the
> citizens of this state reading these statutes at the time of
> enactment would have understood the motor vehicle excep-
> tion to governmental immunity and the . . . governmental

---

[2] Although concluding that *Robinson* should not be applied retroac-
tively to the case before it, the majority in *Ewing* specifically declined to
address the question whether *Robinson* should be applied retroactively
"outside the context" of that case. *Id.* at 166.

immunity act to mean. [*Robinson, supra* at 467-468 (emphasis added).]

Accordingly, because *Robinson* did not overrule clear and uncontroverted precedent, but by the Court's own words rather reaffirmed the law as it existed before its misinterpretation in *Fiser* and *Dedes*, it does not satisfy the threshold criterion for prospective application. See *MEEMIC, supra* at 189. The decision in *Robinson*, when it was rendered, was neither "unexpected" nor "indefensible" in light of the state of the law. In the absence of a clear directive from our Supreme Court indicating that *Robinson* should be applied prospectively, see, e.g., *Pohutski v Allen Park*, 465 Mich 675, 696-697; 641 NW2d 219 (2002), we follow the general rule providing for retroactive application and find that *Robinson* governs this matter.

We affirm.

GAGE, J., concurred.

FITZGERALD, P.J. (*concurring*). I concur in the result reached by the majority, albeit for different reasons.

Plaintiff alleged in his complaint that defendant Lawson was negligent in his operation of the Flint Fire Department paramedic unit by failing to follow standard emergency vehicle protocol in approaching and entering an intersection. He alleged that Lawson's negligence caused Thomas Kells to abruptly change lanes, resulting in plaintiff's vehicle colliding with the rear end of Kells' vehicle. Defendants moved for summary disposition, arguing, in part, that there was not a factual question concerning negligence, MCR 2.116(C)(10).

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Ritchie-Gamester v Berkley*, 461 Mich 73, 76; 597 NW2d 517 (1999). On appeal, a trial court's grant or denial of summary disposition will be reviewed de novo. *Spiek, supra* at 337.

Plaintiff alleged that Lawson was grossly negligent in that he

> failed to operate his motor vehicle with care and in a reasonably prudent manner; failed to observe traffic; failed to drive with due care and caution; operated the motor vehicle in a manner too fast for the conditions then and there existing; endangered life and property with his driving and failed to slow down for the safe operation of the vehicle and disregarded a traffic signal.

Plaintiff also alleged that Lawson

> violated statutory duties and that he failed to slow down as was necessary for the safe operation of the motor vehicle he was operated [sic] and drove over the speed limit in a manner which endangered life and/or property contrary to MCLA 257.603 and further, conducted himself in a grossly negligent manner such as to demonstrate a substantial lack of concern for whether an injury results, so as to except his actions from governmental immunity in accordance with MCLA 691.1407.

Defendants presented the deposition testimony of Kells, who was the only witness who testified about observing Lawson's conduct before Lawson entered

the intersection. Kells testified that he observed the emergency vehicle as it approached the Hammerberg intersection in full emergency mode, and that he observed the emergency vehicle come to a complete stop and the driver look both north and south before entering the intersection. Kells testified that he had been slowing down for nearly two hundred feet and had come to a rolling stop before he reached the intersection. He testified that after stopping he

> looked in [his] rearview mirror and noticed that there were no other cars coming in the left lane, there was only a car coming behind me. Assuming that that person was going to stop behind me, I waved him [Lawson] through the intersection when we made eye contact so that he would know that he was clear up toward the north of Hammerberg and that he could come through and that I was not going to proceed into the intersection. . . . I waived [sic] him [Lawson] into the intersection, and within five seconds of that happening, he began to creep out into the northbound lanes. And then I was hit.

Lawson also testified that, pursuant to policy, he came to a complete stop before entering the intersection. These two individuals are the only individuals who testified about having any personal knowledge of Lawson's conduct before and during his entering the intersection.[1] Under these circumstances, plaintiff failed to present sufficient evidence to create an issue of fact with regard to whether Lawson was negligent in operating the emergency vehicle and, therefore,

---

[1] Plaintiff and one other witness both testified that they did not observe the emergency vehicle until it was already at least partially in the intersection. It is the statements of these two people on which a police officer opined that Lawson failed to enter the intersection in a "careful and prudent manner." However, no citations were written.

summary disposition pursuant to MCR 2.116(C)(10) is appropriate.

Because plaintiff failed to raise a genuine issue of fact with regard to whether Lawson was negligent in his operation of the emergency vehicle, the question whether injury "resulted from" negligent operation of the motor vehicle is not reached. Therefore, it is not necessary to address *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000), or the issue of the prospective or retroactive application of *Robinson*.[2]

---

[2] If the facts of this case had warranted application of *Robinson*, I would conclude, for the reasons stated by the majority in *Ewing v Detroit*, 252 Mich App 149, 166-167; 651 NW2d 780 (2002), that *Robinson* should be given only prospective application:

Initially, we find that *Robinson* established a new rule of law, which now requires a plaintiff who is proceeding pursuant to MCL 691.1405 to show that the police car hit the fleeing car or caused another vehicle or object to hit the vehicle that was being chased or physically forced the vehicle off the road or into another vehicle or object. *Robinson, supra* at 445. Before *Robinson*, there was no such requirement under MCL 691.1405.

Next, we find that the purpose of the new rule was to correct an error in the interpretation of MCL 691.1405 and prospective application would further that purpose and failing to apply the new rule retroactively to our specific case would not thwart the purpose. *Pohutski, supra* at 697.

The majority also gave other reasons in support of its holding, none of which is applicable in the present case.