# Order

Michigan Supreme Court
Lansing, Michigan

October 25, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

158834

MICHAEL SCHAUB, as Next Friend of
LOGAN SCHAUB,
        Plaintiff-Appellant,

v

JAMES ALBERT SEYLER, RYANN ELISE
HERMAN, and TRAVERSE CITY AREA
PUBLIC SCHOOLS,
        Defendants-Appellees.
_____/

SC:  158834
COA:  340993
Grand Traverse CC:
2017-031989-NI

        On order of the Court, the application for leave to appeal the November 15, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

        VIVIANO, J. (*concurring*).

        I concur in the denial order because I believe the Court of Appeals reached the right result under *Robinson v Detroit*, 462 Mich 439, 457 (2000) and *Helfer v Ctr Line Pub Sch*, 477 Mich 931 (2006).  I write separately, however, because, I question whether *Robinson* and *Helfer* correctly interpreted MCL 691.1405.

        Plaintiff, Logan Schaub, was injured when he was hit by a motor vehicle while crossing the street to reach his school bus.  On the date of the injury, plaintiff was a 14-year-old high school freshman who lived on a county road with a speed limit of 55 m.p.h.  He was waiting for the bus at 6:45 a.m., while it was still dark outside.  On a typical day, plaintiff did not cross the road to board the bus and, indeed, according to school district rules, plaintiff's road was classified as a "no-cross road."  On the day in question, plaintiff's bus was driven by RyAnn Herman, an alternate driver who had never driven plaintiff's route before.  When first driving by, Herman missed plaintiff's stop.  Then, she turned the bus around and drove 120 feet past plaintiff's stop before pulling off to the opposite side of the road and activating the bus's right turn signal.  The bus was partially on the gravel shoulder and partially on the traveled portion of the road.  Although Herman turned on the bus's exterior flashing lights for a brief time, she never activated the bus's red lights or stop sign, which would have required traffic to stop.  Plaintiff attempted to cross the street to reach the bus, but was hit by a motor vehicle that was passing the school bus from behind.  After the accident, Herman said (somewhat inconsistently) that "I had no idea he was gonna cross.  I thought that car was gonna go and then he was gonna cross."

        Plaintiff filed suit against Herman, the school district, and the driver of the motor vehicle that hit him.  The trial court denied the school district's motion for summary disposition under MCL 691.1405.  On appeal, the Court of Appeals reversed, applying

*Robinson* to hold that "an injury does not 'result[] from' the negligent operation of a government-owned vehicle under MCL 691.1405 unless the government-owned vehicle makes direct physical contact with the plaintiff in some capacity." *Schaub v Seyler*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2018 (Docket No. 340993), p 7. Therefore, the school district was immune from suit under MCL 691.1405 because "plaintiff has never offered any evidence to suggest that the bus physically contacted him or [the motor] vehicle." *Id.*[1]

MCL 691.1405 provides, in pertinent part:

Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . .

Thus, for a governmental agency to be liable under the motor vehicle exception to governmental immunity, a plaintiff must prove:

(1) bodily injury or property damage

(2) resulting from

(3) the negligent operation by any governmental officer, agent or employee

(4) of a government-owned motor vehicle.

Only the causal element is at issue at this stage of the case.[2]

In *Robinson*, we interpreted MCL 691.1405 in the context of two consolidated cases involving plaintiffs who were passengers in vehicles involved in police chases. When police began pursuing them, the drivers fled, eventually crashing—one into a house and the other into a nongovernment vehicle. *Robinson*, 462 Mich at 448-449.

---

[1] Plaintiff now appeals the Court of Appeals ruling discussed above, as well as the Court of Appeals grant of summary disposition on plaintiff's gross negligence claim against Herman and affirmance of the trial court's finding that plaintiff was more than 50% at fault for the accident in comparison with the driver who hit him. I agree with the denial of leave to appeal on these issues.

[2] Defendant's motion for summary disposition did not address the existence or extent of plaintiff's injuries, and there appears to be no dispute that the bus was owned by the school district. Regarding whether the bus driver was "operating" the bus, I agree with the Court of Appeals majority and our own precedent that "the loading of passengers 'is an action within the "operation" of a . . . bus.' " *Schaub*, unpub op at 7, quoting *Martin v Rapid Inter-Urban Transit Partnership*, 480 Mich 936, 936 (2007).

Interpreting the causal element of MCL 691.1405, the Court concluded "that plaintiffs cannot satisfy the 'resulting from' language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object." *Robinson*, 462 Mich at 457. Thus, to satisfy the *Robinson* test, the pursuing police vehicle must have (1) hit the fleeing car, or (2) otherwise physically forced it (i) off the road or (ii) into another vehicle or object. The Court of Appeals has held that application of the *Robinson* test is not limited to cases involving police pursuit. See *Curtis v City of Flint*, 253 Mich App 555, 561 (2002) (applying the *Robinson* test to a case involving an emergency medical vehicle, and stating the *Robinson* test more generally as requiring "physical contact between the government-owned vehicle and that of the plaintiff, or [that] the government-owned vehicle physically forced the plaintiff's vehicle off the road or into another vehicle or object.").

However, applying this standard in the context of pedestrian accidents has proven challenging. In *McClanahan v Clinton Community Sch Dist*, unpublished per curiam opinion of the Court of Appeals, issued Jan 17, 2006 (Docket No. 256021), the Court of Appeals concluded that the decedent's injuries did not "result from" the defendant's operation of the school bus where it was "undisputed that there was no physical contact between the decedent and the school bus, between the school bus and the cement truck that struck the decedent, or between the decedent and any item placed in motion by the school bus." *Id*. at 3. Although the panel cited *Robinson* and *Curtis*, it did not explain its decision to further limit liability only to cases involving physical contact. As noted, *Robinson* provides that the "resulting from" language is satisfied where the police vehicle hits the fleeing car or otherwise physically forces it off the road or into another vehicle or object. *Robinson*, 462 Mich at 457. Presumably, "physically force" means an action other than physical contact or else it would be subsumed by the first *Robinson* category, which requires that the government vehicle "hit" plaintiff's vehicle.[3]

In *Helfer v Ctr Line Pub Sch*, our Court signaled its approval of a narrower version of the *Robinson* test. In *Helfer*, the Court of Appeals affirmed the denial of the defendant's motion for summary disposition. The facts in that case are somewhat similar to those here—having instructed the plaintiff, a student, to leave the bus, the bus driver turned off the bus's flashing lights.[4] When the student attempted to cross the road to

---

[3] The panel may have omitted addressing the "otherwise physically force" prong of the *Robinson* test because it does not appear to make sense to say that the motor vehicle exception applies when "the government-owned vehicle physically forced [the pedestrian-plaintiff] off the road or into another vehicle or object."

[4] *Helfer v Ctr Line Pub Sch*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2006 (Docket No. 265757). The caption of the majority opinion spells the name "Helfner," although the docket listing indicates that "Helfer" is correct, as does

return home, a car attempting to pass the bus struck her. The Court of Appeals majority believed that summary disposition was inappropriate, reasoning that the driver "*did* physically place an object in motion*" by turning off the lights. *Helfer v Ctr Line Pub Sch*, unpublished per curiam opinion of the Court of Appeals, issued June 20, 2006 (Docket No. 265757), p 4. Therefore, "Defendant's operation of the school bus may be found to have directly caused the accident because it exercised control over the physical movement of another vehicle." *Id.*

However, then-Chief Judge WHITBECK dissented, noting that "there was *no* direct physical contact between the bus and the vehicle that hit [the plaintiff], nor was there direct contact between [the plaintiff] and the bus." *Id*. (WHITBECK, C.J., dissenting) at 2. By looking only to "direct physical contact," the Court of Appeals dissent applied only the first part of *Robinson*'s test, but failed to consider whether the plaintiff could meet the second prong, i.e., whether the bus otherwise physically forced the plaintiff (i) off the road, or (ii) into another vehicle or object. Nevertheless, this Court impliedly endorsed the dissent's interpretation in an order reversing *Helfer* for the reasons stated in the dissent. *Helfer*, 477 Mich at 931.

Thus, a narrower version of the *Robinson* test—one limiting liability to cases involving physical contact—has been applied (and continues to be applied) in the context of pedestrian accidents.[5] While our Court has signaled its approval of this new test in its *Helfer* order, neither this Court nor the Court of Appeals has expressly adopted the test in a published opinion.

One reason courts have had difficulty in applying *Robinson*'s "resulting from" test to pedestrian accident cases may be that *Robinson*'s interpretation does not appear to track the plain language of MCL 691.1405. In its analysis, the *Robinson* Court first quoted three definitions of the word "result": "To occur or exist as a consequence of a particular cause[;] To end in a particular way[;] The consequence of a particular action, operation or course; outcome." *Robinson*, 462 Mich at 456, quoting *American Heritage Dictionary* (2d college ed), p 1054 (alterations in original). Although the first two definitions apply when "result" is used as an intransitive verb, and the third applies when it is used as a noun, we made no effort in *Robinson* to distinguish between these definitions or to determine which of them actually applied. Instead the Court took a different tack. Citing the holding in *Ross v Consumers Power Co (On Rehearing)*, 420

---

the dissenting opinion and this Court's subsequent order. See *id*. (WHITBECK, C.J., dissenting); *Helfer*, 477 Mich 931.

[5] See also *Estate of Fisher v Southfield Pub Sch*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2019 (Docket No. 288106), p 3 ("[B]ecause the school bus was not physically involved in the collision that caused the decedent's injuries, the motor vehicle exception to governmental immunity is inapplicable.").

Mich 567 (1984), that statutory exceptions to government immunity are to be narrowly construed, *Robinson*, 462 Mich at 455, the Court concluded "that plaintiffs cannot satisfy the 'resulting from' language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object," *id*. at 457.[6]

But this rule appears to be a non sequitur. The Court did not apply the definitions it cited or even refer to them in arriving at this new rule. Instead, the Court summarily announced a new test designed to achieve a "narrow" construction, employing a method of interpretation that has largely fallen out of favor. See, e.g., *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 553 n 18 (2016) (agreeing that a "provision requiring that a statute be liberally construed 'should be regarded as requiring a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway.' "), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St Paul: Thomson/West, 2012), p 233 (quotation marks and citation omitted).[7] Indeed, the connection between *Robinson*'s test and the statutory language is not entirely clear. Why must the meaning of "resulting from" be limited to the three categories *Robinson* sets forth? In particular, why does *Robinson* rely so heavily on physical contact to satisfy the statutory causal requirement? Though *Robinson* provides that a plaintiff can satisfy the "resulting from" language when physically forced off the road, the other two categories—i.e., when the government vehicle "hit[s]" the plaintiff's vehicle or "otherwise physically force[s] it . . . into another vehicle or object"—both require physical contact. Perhaps this unexplained emphasis on physical contact is why later courts have narrowed *Robinson*'s test to require physical contact. While I find *Robinson*'s rule concerning because its connection to the statutory language is unclear, I find these later Court of Appeals interpretations and our order in *Helfer* particularly troubling, since the statute does not require physical contact.

---

[6] Although the Court stated that "*Ross v Consumers Power Co* . . . held that statutory exceptions to governmental immunity are to be narrowly construed," *Robinson*, 462 Mich at 455, *Ross* only describes the statutory exceptions as "narrowly drawn," *Ross*, 420 Mich at 618. However, we have held elsewhere that exceptions to governmental immunity must be narrowly construed. See *Kerbersky v Northern Mich Univ*, 458 Mich 525, 529 (1998); *Horace v City of Pontiac*, 456 Mich 744, 749 (1998); *Wade v Dep't of Corrections*, 439 Mich 158, 166 (1992).

[7] The authors make the point that, while the Legislature or private parties may "supply the definition of the words, and specify the implication of the words, that go into [the] determination of fair meaning," they may not remove the "duty of the courts . . . to give private and public texts their fair meaning." *Reading Law*, p 233. If drafters do not have this power, then judges—as interpreters of the text—surely lack the power to decree by fiat how broadly or narrowly a statute must be construed.

I think that our Court should reexamine both *Robinson*'s and *Helfer*'s interpretations of MCL 691.1405 because I am not convinced that either gives fair meaning to the text of the statute.[8] Giving the term "result" its contextually appropriate ordinary meaning,[9] bodily injury or property damage "result[s] from the negligent operation" of a government-owned motor vehicle if it "occur[s] . . . as a consequence of" the negligent operation of that vehicle. Thus, contrary to *Helfer*'s interpretation, neither the text of the statute nor the contextually appropriate definition of "result" requires physical contact.[10] And, contrary to *Robinson*'s interpretation, I see no reason why the

---

[8] As the Court observed elsewhere in *Robinson*, "[I]t is to the words of the statute itself that a citizen first looks for guidance in directing his actions . . . . [I]f the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts." *Robinson*, 462 Mich at 467.

[9] See *In re Erwin*, 503 Mich 1, 33 (2018) (VIVIANO, J., dissenting) ("[W]hen a word has more than one definition, the context determines the sense in which the Legislature used the word.").

[10] See *Fiser v Ann Arbor*, 417 Mich 461, 479 (1983) (RYAN, J., concurring) ("Neither the statute which excepts the City of Ann Arbor, and consequently the individual defendant officers, from the protection of the immunity statute for motor vehicle-related negligence, nor the common law, requires that to establish liability it must be shown that the police cars made actual contact with the plaintiff's vehicle or were directly involved in the collision."), overruled by *Robinson*, 462 Mich at 445. Ironically, the *Robinson* Court declined to import a proximate cause analysis into the statute because the Legislature "did not utilize proximate cause language . . . ." *Robinson*, 462 Mich at 457 n 14. Leaving aside, for now, whether this conclusion was correct, I think two additional things are worth noting regarding *Helfer*'s physical contact requirement. First, this Court has not imposed a physical contact requirement when interpreting MCL 500.3105(1), a statute with similar language in the no-fault act. See, e.g., *Thornton v Allstate Ins Co*, 425 Mich 643, 659-660 (1986) (interpreting "injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle" in MCL 500.3105(1) as "provid[ing] coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' The involvement of the car in the injury should be 'directly related to its character as a motor vehicle.' ") (citation omitted). Second, and perhaps even more significantly, the Legislature has shown itself quite capable of explicitly requiring physical contact when it wishes to do so. See, e.g., MCL 500.3106(1) ("Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur: (b) . . . the injury was *a direct result of physical contact* with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.") (emphasis added).

only scenario not involving physical contact that can satisfy the "resulting from" language is when the government vehicle forces the plaintiff's vehicle off the road.

I would revisit *Robinson*'s and *Helfer*'s interpretations of MCL 691.1405 in an appropriate future case because they do not appear to be based on the plain language of the statute. But since no party here has asked us to reconsider *Robinson* or *Helfer*, I concur with the Court's denial order in this case.

McCormack, C.J., joins the statement of Viviano, J.

Bernstein, J. (*dissenting*).

I respectfully dissent. I agree with Justice Viviano's analysis regarding *Robinson v Detroit*, 462 Mich 439, 457 (2000), and *Helfer v Ctr Line Pub Sch*, 477 Mich 931 (2006). However, I would have granted the application for leave to appeal on plaintiff's issues regarding gross negligence and apportionment of fault.

Cavanagh, J., did not participate because of her prior representation of a party.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 25, 2019



Clerk

a1022