*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RACHEL WILSON,

        Plaintiff-Appellee,

v

LAURA DURON and LIVONIA PUBLIC
SCHOOLS,

        Defendants-Appellants.

UNPUBLISHED
August 31, 2023

No. 359827
Wayne Circuit Court
LC No. 20-008244-NI

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

Defendants appeal as of right the order denying their motion for summary disposition under MCR 2.116(C)(7) and (10). On appeal, defendants argue the trial court erred by denying their motion for summary disposition, because (1) the trial court abused its discretion by permitting plaintiff to amend her complaint to have properly pleaded in avoidance of governmental immunity; and (2) there was no genuine issue of material fact concerning the issues of defendants' negligence or gross negligence, causation, and whether plaintiff suffered a threshold injury. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a February 10, 2020 motor vehicle accident between plaintiff's vehicle and a school bus. The witnesses to the event dispute certain specific facts, but agree on the general underlying facts. Plaintiff was driving southbound on Farmington Road while defendant, Laura Duron, was driving a school bus for defendant, Livonia Public Schools (LPS), northbound on Farmington Road to drop children off after school. Plaintiff was talking to her husband on her cell phone. Duron was in the far-right lane and merged two lanes over into the middle lane to turn left onto Fargo Road. Duron asserted she turned on her turn signal and that she stopped and checked for oncoming traffic before beginning to turn left. However, Ronald Barnett, who was driving behind the bus, testified that the bus only slowed down and did not stop before turning left. There were no traffic lights or signs at the intersection.

Duron testified she did not see plaintiff's vehicle until the accident occurred, but Barnett testified he could see plaintiff's vehicle before the accident. While turning, the bus collided with plaintiff's vehicle. Plaintiff attempted to hit the brakes to avoid hitting the bus, but it was too late. Duron received a traffic citation, while plaintiff did not. Duron believed plaintiff was speeding because of the force of the impact, but plaintiff denied speeding. Barnett did not know whether plaintiff was speeding, but opined the bus could not have been going more than 25 miles per hour. Duron and the children on the bus were uninjured, but plaintiff was injured and was taken to the hospital. Plaintiff suffered fractures in her right wrist. Her right arm is her dominant arm. There was evidence that plaintiff was unable to return to work until approximately April 13, 2020, and required attendant care from her husband for several months. Plaintiff suffered sleep disruptions from the pain, and it had been more difficult to care for her son with special needs.

Plaintiff filed suit against defendants, asserting a single claim of "vehicular negligence." Plaintiff asserted: "Defendants were under a duty to obey the Statutes of the State of Michigan applicable to the operation of motor vehicles and to exercise reasonable care under the circumstances." Among the allegations, plaintiff asserted that the bus was operated "in a careless, reckless and wanton manner in total disregard of the rights and safety of others lawfully upon the highway[,]" and accused Duron of "driving a motor vehicle in a reckless and erratic manner in total disregard of the rights and safety of others which conduct and state of mind under the facts and circumstances amounted to gross negligence[.]" The complaint contained allegations of negligence and gross negligence, and plaintiff specifically alleged that Duron failed to keep a proper lookout, failed to yield the right of way, and executed a left turn before ensuring the turn could be made safely. In their answer, defendants asserted that plaintiff's claims were barred by governmental immunity.

During her deposition, in addition to describing the facts underlying the accident, plaintiff testified she could not exercise after the accident and had gained weight as a result. While plaintiff was able to return to her job early because it became virtual, plaintiff had difficulty with irritation and discomfort in her arm from sitting at a computer and manipulating a mouse all day, and she needed to take frequent breaks to stretch. Plaintiff also testified that she believed Duron was grossly negligent by "driving a bus full of children" and failing to "yield to a driver that has the right of way."

During Duron's deposition, in addition to describing the facts underlying the accident, Duron testified she believed plaintiff was at fault for the accident, because: "How do you not see a big yellow bus and attempt to stop?" Duron admitted that before she made her left turn, the vehicles traveling south on Farmington Road had the right of way.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing (1) that plaintiff's claim against LPS was barred because plaintiff had failed to allege the application of any exception to governmental immunity, (2) that plaintiff's claim against Duron failed because plaintiff had no evidence of Duron's mindset when she made the left turn and therefore could not establish that Duron acted recklessly for purposes of showing gross negligence as required to defeat the immunity applicable to a governmental employee, and (3) that plaintiff's complaint failed to state a claim on which relief could be granted because plaintiff's wrist fractures did not constitute a serious impairment of body function for purposes of MCL 500.3135. However, defendants also admitted in their motion that plaintiff's complaint had "allege[d] vehicular

negligence, including negligence and gross negligence against Defendants," arising out of a motor vehicle accident.

In response, plaintiff argued that she had adequately pleaded facts demonstrating the application of the motor vehicle exception to governmental immunity, sufficiently providing defendants with notice of the claims against them. Alternatively, plaintiff requested leave to amend her complaint to specifically reference MCL 691.1405, which sets forth the motor vehicle exception. Plaintiff additionally argued that there was evidence creating a question of fact as to Duron's gross negligence based on the testimony of Barnett describing the accident, such that summary disposition should be denied with respect to the claim against Duron. Finally, plaintiff argued that there was evidence creating a question of fact that plaintiff suffered a threshold injury under MCL 500.3135.

At the hearing on defendants' motion, plaintiff maintained that she had adequately pleaded in avoidance of governmental immunity with respect to her claims against both LPS and Duron. Defendants, in addition to reiterating the arguments from their written filings, argued that there was no question of fact that Duron was not *the* proximate cause of the accident because plaintiff's own negligence was at least partially responsible for the accident.

The trial court allowed plaintiff to amend her pleadings, noting that plaintiff's complaint was "disappointing" but also that defendants had obviously recognized the nature of plaintiff's claims. The trial court denied defendants' motion for summary disposition under MCR 2.116(C)(7) and (C)(10). The court concluded that there were genuine questions of fact regarding Duron's negligence and gross negligence such that governmental immunity did not preclude plaintiff's claims against either defendant, further stating that the questions of fact regarding negligence implicated the motor vehicle exception to governmental immunity. The trial court also concluded that there were genuine questions of fact whether plaintiff suffered a threshold injury.

Defendants now appeal.

## II. ANALYSIS

### A. AMENDMENT

Defendants first argue that the trial court abused its discretion by permitting plaintiff to amend her complaint.

"The grant or denial of a motion for leave to amend pleadings is reviewed for an abuse of discretion." *Titan Ins Co v North Pointe Ins Co*, 270 Mich App 339, 346; 715 NW2d 324 (2006). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Nowacki v Dep't of Corrections*, 319 Mich App 144, 148; 900 NW2d 154 (2017) (quotation marks and citation omitted).

"Governmental immunity is not an affirmative defense proffered by governmental defendants, but rather is a characteristic of government; therefore 'a party suing a unit of government must plead in avoidance of governmental immunity.' " *Kendricks v Rehfield*, 270 Mich App 679, 681; 716 NW2d 623 (2006) (citation omitted). "To be effective, such pleading must state a claim that fits within a statutory exception to immunity or include facts that indicate

the action at issue was outside the exercise of a governmental function." *Id.* However, "a governmental employee, has the burden to raise and prove his entitlement to immunity as an affirmative defense." *Ray v Swager*, 501 Mich 52, 62; 903 NW2d 366 (2017) (*Ray I*) (quotation marks and citation omitted).

"Leave to amend a pleading should be freely permitted when justice requires. MCR 2.118(A)(2)." *Titan*, 270 Mich App at 346.

> A motion to amend ordinarily should be granted, and should be denied only for the following particularized reasons:
>
> > "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [and 5] futility. . . ." [*Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997) (citation omitted; alterations and ellipsis in original).]

Here, defendants essentially argue that by granting plaintiff leave to amend, the trial court improperly allowed plaintiff to assert a new claim or theory of recovery too late in the proceedings and after discovery had ended. Defendants maintain that plaintiff had known since defendants filed their answer that defendants were asserting governmental immunity, yet plaintiff improperly delayed in requesting to amend her complaint until after defendants moved for summary disposition.

While "[d]elay, alone, does not warrant denial of a motion to amend[,]" *id.* at 659, "a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result[,]" *id.* Prejudice "exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id.* However, there are some situations where a delay is "so long and the amendment so substantial that the opposing party would be denied a fair trial by the delay, and therefore be prejudiced[.]" *Id.* Therefore:

> [A] trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id.* at 659-660.]

In this case, despite defendants' complaints about the timing of plaintiff's request to amend the complaint, defendants failed to establish they had no "reasonable notice, from any source," that plaintiff's claims relied on the motor vehicle exception to governmental immunity and the alleged gross negligence of Duron. Plaintiff argued she properly pleaded in avoidance of governmental immunity in her original complaint and in her response to defendants' motion for summary disposition, and the trial court explicitly explained what plaintiff needed to do in her amendment to cure the defects in her complaint. No new claims were being added through the

amendment; instead, the existing claims were to be clarified. Plaintiff's first amended complaint more clearly alleged negligence against LPS and gross negligence against Duron. Plaintiff's request to amend was the direct result of defendants' asserted defense and, as the trial court noted, defendants' motion for summary disposition demonstrated that they were well aware of the nature of plaintiff's claims. Despite the deficiencies in the clarity of plaintiff's original complaint, she still pleaded facts evidencing alleged negligent operation by a governmental employee of a governmental agency's motor vehicle[1] and gross negligence by a governmental employee,[2] thereby stating "claim[s] that fit[] within a statutory exception to immunity." *Kendricks*, 270 Mich App at 681.

In addition to there being no evidence of "*undue* prejudice" to defendants from allowing the amendment, as we have already discussed, the record does not support a conclusion that the delay was "*undue*" where plaintiff apparently believed the original complaint sufficiently pleaded facts in avoidance of governmental immunity. See *Weymers*, 454 Mich at 658. There is also no evidence of bad faith or dilatory motive by plaintiff, and there is no evidence of *repeated* failures to cure deficiencies. See *id*. For the reasons to be discussed below regarding whether plaintiff established questions of material fact to survive summary disposition, allowing the amendment was not futile. See *id*. Hence, particularized reasons that would have justified denying the motion to amend did not exist. *Id*. Defendants have not demonstrated on appeal that the trial court abused its discretion by granting plaintiff leave to amend her complaint. *Titan*, 270 Mich App at 346; *Nowacki*, 319 Mich App at 148.

## B. SUMMARY DISPOSITION

Next, defendants argue the trial court erred by determining genuine issues of material fact existed regarding LPS's and Duron's negligence, or gross negligence, the issue of causation, and whether plaintiff established a threshold injury. We address each of these arguments in turn.

"We review de novo a trial court's decision to grant or deny summary disposition." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 45; 951 NW2d 64 (2020). "In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition." *Id*.

"MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). This Court has explained the nature of our appellate review under this subrule as follows:

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if

---

[1] See MCL 691.1405.

[2] See MCL 691.1407(2).

reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom*, 287 Mich App at 428-429 (citations omitted).]

"A motion under [MCR 2.116(C)(10)] tests the factual sufficiency of the complaint." *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017) (quotation marks and citation omitted). A trial court, in evaluating a motion for summary disposition under MCR 2.116(C)(10), "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* (quotation marks and citation omitted).

Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*West v Gen Motors Co*, 469 Mich 177, 183; 665 NW2d 468 (2003).]

"[A] trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "Governmental immunity is a question of law that is also reviewed de novo on appeal." *Kendricks*, 270 Mich App at 682.

## 1. NEGLIGENCE AND GROSS NEGLIGENCE

"The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, states: 'Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.' MCL 691.1407(1)." *Wesche v Mecosta County Rd Comm*, 480 Mich 75, 83-84; 746 NW2d 847 (2008). "This grant of immunity is subject to six statutory exceptions." *Id.* at 84 (citations omitted). Among these exceptions is the motor vehicle exception, MCL 691.1405, which states:

Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948. [MCL 691.1405.]

Under MCL 691.1405, a governmental agency is "liable only if plaintiff's injuries resulted from 'the negligent operation' of a motor vehicle" and is immune from liability if there was no negligence. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 436; 824 NW2d 318 (2012). "In order to establish a prima facie negligence claim, a plaintiff must prove four elements: (1) duty, (2) breach of the duty, (3) causation, and (4) damages." *Id.* at 433.

However, the "Legislature has prescribed different standards for determining whether immunity is afforded to governmental agencies and employees." *Wesche*, 480 Mich at 92. Although the motor vehicle exception provides an exception to governmental immunity for governmental agencies, Duron's personal immunity as a governmental employee is instead governed by MCL 691.1407(2). *Wesche*, 480 Mich at 92. This statute provides as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

The parties only dispute whether there was evidence creating a question of material fact that Duron's conduct constituted "gross negligence that [was] the proximate cause of the injury." *Id*. For purposes of MCL 691.1407, "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "[S]ummary disposition is precluded where reasonable jurors honestly could have reached different conclusions with respect to whether a defendant's conduct amounted to gross negligence." *Kendricks*, 270 Mich App at 682 (quotation marks and citation omitted). Gross negligence suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). "It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge." *Id*.

There were no traffic signs or signals at the intersection in question and the respective rights of way of the parties were controlled by MCL 257.650(1), which provides as follows:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to constitute an immediate hazard; but the driver, having so yielded and having given a signal when and as required by this chapter, may make the left turn and the drivers of all other

vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn.

Here, the testimonies of the three witnesses create issues of fact regarding whether: (1) Duron came to a complete stop before beginning to turn, or only slowed down; (2) Duron saw or should have seen plaintiff's vehicle coming toward her at a distance that presented an immediate hazard; and (3) plaintiff was speeding immediately before the collision. Furthermore, Barnett specifically testified that the bus had stopped to drop off students and then merged from the far-right lane across two lanes to the center left-turn lane, accomplishing this maneuver within a short distance by "a diagonal cutting across two lanes into the left-hand turn lane." Barnett saw plaintiff's vehicle approaching from the opposite direction as the bus merged across two lanes of traffic, and Barnett observed the bus merely "slow down" and continue "rolling," without making a complete stop, before proceeding to make the left turn. Barnett testified that "the bus struck the minivan."

From this evidence, viewed in a light most favorable to plaintiff as the nonmoving party, a reasonable juror could conclude that Duron demonstrated a willful disregard for safety and substantial risk of harm to the children she was transporting and other drivers on the road, constituting gross negligence, by making a sudden double-lane change over a short distance and immediately turning left without stopping, in a reckless attempt to beat the visible and closely approaching oncoming traffic in completing her turn. MCL 257.650(1); MCL 691.1407(8)(a); *Tarlea*, 263 Mich App at 90. The trial court did not err by concluding that there was a genuine issue of material fact whether Duron was grossly negligent. *Kendricks*, 270 Mich App at 682; *Broz*, 331 Mich App at 45.

Gross negligence is conduct that is "substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). Because a genuine issue of material fact exists regarding whether Duron was grossly negligent, an issue of fact necessarily exists concerning whether Duron was negligent in her operation of the vehicle, based on the same evidence discussed above, such that LPS could be held liable pursuant to the motor vehicle exception. See MCL 691.1405 ("Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner"). Accordingly, the trial court also did not err by concluding that there was a genuine issue of material fact regarding Duron's negligence. *Kendricks*, 270 Mich App at 682; *Broz*, 331 Mich App at 45.

## 2. CAUSATION

Next, defendants argue that they were entitled to summary disposition because plaintiff did not establish a genuine issue of material fact regarding causation. Essentially, defendants contend that plaintiff was at fault, and that plaintiff was *the* proximate cause of the accident, because plaintiff failed to yield to Duron once the bus initiated its left turn and entered the lanes of oncoming traffic. Further, defendants contend that it was not foreseeable to Duron that plaintiff would fail to yield. Defendants argue that because of plaintiff's alleged role in causing the accident, Duron could not be *the* proximate or legal cause of the accident and defendants were thus entitled to summary disposition in their favor.

As an initial matter, the causation analysis applicable to plaintiff's claim under the motor vehicle exception against LPS is slightly different than the causation analysis applicable to plaintiff's claim against Duron individually under MCL 691.1407(2). Under the motor vehicle exception, a governmental agency is "liable for bodily injury '*resulting from* the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle' owned by the governmental agency." *Curtis v City of Flint*, 253 Mich App 555, 559; 655 NW2d 791 (2002), quoting MCL 691.1405 (emphasis added). In construing the "resulting from" language in MCL 691.1405, our Supreme Court held "result" means, "To occur or exist as a consequence of a particular cause[;] To end in a particular way[;] The consequence of a particular action, operation or course; outcome." *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000) (quotation marks and citation omitted; alterations in original). This is not a traditional proximate cause analysis.[3] *Id*. at 457 n 14 ("[T]he [motor vehicle exception] statute does not say that governmental agencies are liable for injuries or property damage 'proximately caused' by the negligent operation of a motor vehicle. Rather, the statute says the injuries or property damage must result from the negligent operation of a motor vehicle. Because the Legislature did not utilize proximate cause language, we will not import such an analysis here."); see also *Curtis*, 253 Mich App at 560 ("[T]he phrase 'resulting from,' as used in MCL 691.1405, requires a more direct causal connection than the proximate cause 'but for' analysis generally employed in cases alleging liability based on negligent conduct . . . .").

However, immunity for a governmental employee under MCL 691.1407(2) requires, among other things, that the governmental employee's conduct "does not amount to gross negligence that is *the* proximate cause of the injury or damage." MCL 691.1407(2)(c) (emphasis added). "[W]hen assessing whether a governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury . . . .' " *Ray I*, 501 Mich at 65, quoting *Robinson*, 462 Mich at 462 (ellipsis in original).

"A proper legal [i.e. proximate] causation inquiry considers whether an actor should be held legally responsible for his or her conduct, which requires determining whether the actor's breach of a duty to the plaintiff was a proximate cause of the plaintiff's injury," and it "is not uncommon that more than one proximate cause contributes to an injury." *Ray I*, 501 Mich at 65. "Determining whether an actor's conduct was 'the proximate cause' under the GTLA does not involve a weighing of factual causes." *Id*. at 74. "The relevant inquiry is not whether the defendant's conduct was the immediate factual cause of injury, but whether, weighing the legal responsibilities of the actors involved, the government actor could be considered 'the proximate cause.' " *Ray v Swager (On Remand)*, 321 Mich App 755, 760; 909 NW2d 917 (2017) (*Ray II*).

"Further, before an actor can be a proximate cause, there must be the prerequisite determination that the actor was negligent—that is, that the actor breached a duty." *Ray I*, 501 Mich at 74. Without determining that the defendant driver was negligent, the defendant driver's

---

[3] "Proximate cause, also known as legal causation, is a legal term of art." *Ray I*, 501 Mich at 63. However, the term "proximate cause" is used "both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation." *Id*.

actions cannot be considered a proximate cause of the plaintiff's injuries. *Id*. Determining whether the defendant's actions were "*the* proximate cause" requires "considering defendant's actions alongside any other potential proximate causes to determine whether defendant's actions were, or could have been, 'the one most immediate, efficient, and direct cause' of the injuries." *Id*. at 76, quoting *Robinson*, 462 Mich at 446.

Turning first to plaintiff's claim against LPS under the motor vehicle exception, we have already noted that the respective rights of way of the parties were controlled by MCL 257.650(1), which provides as follows:

> The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to constitute an immediate hazard; but the driver, having so yielded and having given a signal when and as required by this chapter, may make the left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn.

Here, defendants assume that Duron was in the intersection first and that plaintiff therefore was required to yield the right of way to Duron and allow Duron to complete her left turn before plaintiff could proceed through the intersection. Defendants' factual premise is far from undisputed. Barnett testified that he observed the bus cut across two lanes of traffic within a short distance, slow down, and proceed into the intersection to turn left where the bus hit plaintiff's vehicle. Barnett also testified that he saw plaintiff's vehicle approaching from the opposite direction as the bus merged from the far-right lane into the middle left-turn lane and before the bus initiated its turn. Duron testified that she used her turn signal, stopped, looked for oncoming traffic, and did not see plaintiff's vehicle until the accident occurred. In accordance with our conclusion above, the evidence when viewed in a light most favorable to plaintiff establishes a question of material fact whether Duron was negligent (or grossly negligent) because plaintiff's vehicle was "within the intersection or so close to the intersection as to constitute an immediate hazard" such that Duron was required to yield and allow plaintiff to pass through the intersection before Duron made her left turn. See MCL 257.650(1).

From this evidence, a jury could also reasonably conclude that the collision and plaintiff's injury "result[ed] from" Duron's negligence in turning left into oncoming traffic and hitting plaintiff's vehicle. MCL 691.1405; *Curtis*, 253 Mich App at 559-560.

We acknowledge that plaintiff did not have some kind of absolute right of way in this situation without her own duty of due care. As our Supreme Court has explained:

> The driver, as we know, was under a duty to exercise due care. He must make reasonable allowance for traffic conditions, for fog, snow, or other adverse weather conditions, and for curves and road conditions. But due care for such a driver does not demand that he slacken his speed or prepare to stop at successive street intersections in the anticipation that side-street drivers will contest his right of way. Not only would such action impede the flow of arterial traffic but it would be hazardous to both the driver and those following him. Due care, then, for the

arterial driver includes his right to assume that he will be accorded the right of way. This assumption may be relied upon by him until he is aware, or as a reasonably prudent driver should be aware, that his right-of-way is being challenged. . . .

When did such duty arise?  When must he (in the exercise of due care) take steps to avoid collision with a subordinate driver who ventures into his path?  Only, as we have noted, when it becomes obvious, or should become obvious to the reasonably prudent arterial driver, that his right-of-way is, in truth being contested. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point.  If he, at this point, does not act with reasonable care he may be forced to respond in damages, but reasonable care at this point is the care of one confronted with an emergency not of his creation, in the light of which his actions will be judged.  The doctrine of proximate cause also, must be examined.  It may well be that there has been negligence on the part of the arterial driver but that his permissible speed, and the traffic conditions, were then such that, even had he been alert, looked, discovered the danger, and responded instantaneously and properly, no action on his part could have averted collision once the subordinate driver came into his path.  If this were the case his negligence in not properly observing or acting could not be a proximate cause of the accident.' [*DePriest v Kooiman*, 379 Mich 44, 46-47; 149 NW2d 449 (1967) (quotation marks and citations omitted).]

With these principles in mind, defendants' arguments on appeal are more properly understood as arguments about the comparative negligence of plaintiff.  However, "comparative negligence is an affirmative defense" that has been adopted as a "standard to promulgate a fair system of apportionment of damages." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992) (quotation marks and citation omitted).  Whereas a plaintiff used to be "wholly precluded from bringing a negligence action against a defendant if the plaintiff was contributorily negligent," the doctrine of comparative negligence that has been adopted in Michigan permits a defendant to "present evidence of a plaintiff's negligence in order to reduce liability."  *Id*. "[B]efore a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent." *Id*. at 99 (quotation marks and citation omitted).

Furthermore, this Court has explained:

The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration.  In addition, proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence. [*Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991) (citations omitted).]

Here, there are genuine questions of material fact on which reasonable minds could differ regarding whether any comparative negligence by plaintiff was a proximate cause of the accident.

-11-

From the record evidence, a jury could reasonably conclude that the bus hit plaintiff's vehicle when Duron turned directly into plaintiff's vehicle and that there was no possible action plaintiff could have taken to avoid the collision, whether or not plaintiff was also guilty of negligence. See *DePriest*, 379 Mich at 46-47. Combined with the evidence creating genuine questions of material fact regarding whether Duron was negligent and whether plaintiff's injury resulted from negligence by Duron, it cannot be concluded as a matter of law that LPS was entitled to immunity under MCL 691.1405. The trial court did not err by denying summary disposition on this ground.[4] *Broz*, 331 Mich App at 45.

Similarly, the same questions of fact existing on this record preclude this Court from assessing the parties' respective negligence and weighing their respective legal responsibility to determine "*the* proximate cause" of the accident and plaintiff's injuries for purposes of determining whether Duron is entitled to immunity under MCL 691.1407(2). *Ray II*, 321 Mich App at 760-761. Thus, the trial court also did not err by denying summary disposition on this ground. *Broz*, 331 Mich App at 45.

## 3. THRESHOLD INJURY

Finally, defendants argue that plaintiff's claims should have been dismissed because she failed to establish a question of fact as to whether she suffered serious impairment of a body function under MCL 500.3135.

MCL 500.3135[5] provides in relevant part as follows:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

\* \* \*

---

[4] To the extent defendants also assert that plaintiff's action should be barred under MCL 500.3135(2)(b), which states that "[d]amages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault," our analysis would not be any different because it also cannot be said that no reasonable juror could find on this record that Duron was 50% or more at fault.

[5] Our Supreme Court has held that "the restrictions set forth in the no-fault act control the broad statement of liability found in the [governmental] immunity statute[, MCL 691.1405]." *Hardy v Oakland Co*, 461 Mich 561, 565; 607 NW2d 718 (2000). "The plain language of MCL 691.1405 and MCL 500.3135 may be read harmoniously to provide that a plaintiff may avoid governmental immunity if he suffers "bodily injury" under the motor vehicle exception of MCL 691.1405, but he must also satisfy the no-fault act threshold for bringing a third-party tort claim, i.e., a plaintiff must establish a serious impairment of a body function as stated in MCL 500.3135." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 55-56; 760 NW2d 811 (2008).

(5) As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

Here, there was evidence that plaintiff suffered fractures in her right wrist and that she is right handed. Further, there was additional record evidence that plaintiff was unable to return to work for more than two months after the accident, that she required attendant care from her husband for several months, that she suffered sleep disruptions from the pain, and that it had been more difficult to care for her son with special needs. Plaintiff testified that when she returned to work virtually, she had difficulty with irritation and discomfort in her arm from sitting at a computer and manipulating a mouse all day. Plaintiff explained that she needed to take frequent breaks to stretch.

With respect to the first prong of the test for showing a serious impairment of body function test, "an 'objectively manifested' impairment is commonly understood as one observable or perceivable from actual symptoms or conditions." *McCormick v Carrier*, 487 Mich 180, 196; 795 NW2d 517 (2010). The *McCormick* Court explained that "[i]mpairment is the state of being impaired, and to be impaired means being weakened, diminished, or damaged or functioning poorly or inadequately." *Id*. at 197 (quotation marks and citations omitted). "[W]hile an injury is the actual damage or wound, an impairment generally relates to the effect of that damage[,]" and "when considering an impairment, the focus is not on the injuries themselves, but how the injuries affected a particular body function." *Id*. (quotation marks and citation omitted).

A broken wrist is observable or perceivable from actual conditions, as was evident from plaintiff's medical records in this case diagnosing the fractures. The functioning of plaintiff's wrist was clearly weakened or diminished for some period of time; she had a cast or splint, which would have restricted her ability to move her wrist and hand, and plaintiff testified that for a period of time she was unable to complete normal household chores such as cleaning, sweeping, cooking, and doing dishes. Thus, there was evidence creating a question of fact on the first prong. *Id*. at 196-197.

Yet, defendants argue that plaintiff "did not suffer an objectively manifested impairment" because the "extent of Plaintiff's injuries only includes a nondisplaced fracture of her right wrist." Defendants then list all of the injuries that plaintiff undisputedly did not have. Defendants seem

to imply that because plaintiff also did not suffer certain additional acute traumatic injuries, her wrist fractures cannot constitute an objectively manifested impairment. This argument is completely divorced from the *McCormick* standard and thus entirely without merit. See *id*.

Next, plaintiff was right handed and the impairment to her right wrist constitutes "an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person." MCL 500.3135(5)(b). It almost goes without saying that a person's dominant hand and wrist is "a body function of great value, significance, or consequence." *Id*. Moreover, "this prong is an inherently subjective inquiry that must be decided on a case-by-case basis, because what may seem to be a trivial body function for most people may be subjectively important to some, depending on the relationship of that function to the person's life." *McCormick*, 487 Mich at 199. Plaintiff's testimony supports a conclusion that her right wrist was an important body function to her, the use of which was necessary to her ordinary tasks involving typical cleaning, cooking, and use of a computer. *Id*. There were accordingly questions of fact regarding the second prong. *Id*.

Regarding the third prong,

> the common understanding of to "affect the person's ability to lead his or her normal life" is to have an influence on some of the person's capacity to live in his or her normal manner of living. By modifying "normal life" with "his or her," the Legislature indicated that this requires a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis. Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident. [*Id*. at 202.]

Here, plaintiff presented evidence that because of her impairment, she was unable to care for herself or her family for a period of time to the same extent that she previously had been able. There was also evidence that plaintiff's impairment had affected her ability to exercise, work, and sleep. Accordingly, there was evidence creating a question of fact on the third prong. *Id*. Defendants' focus on arguing that plaintiff is currently without restrictions misses the point because "the statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed[;]" there "is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected[;]" and "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *McCormick*, 487 Mich at 202, 203. Defendants have demonstrated a total misunderstanding of the *McCormick* standard in advancing their appellate arguments.

Viewing the evidence in a light most favorable to plaintiff, the trial court did not err by concluding that there were genuine issues of material fact regarding a threshold injury and denying summary disposition on this basis. *Broz*, 331 Mich App at 45.

Affirmed.  Plaintiff having prevailed is entitled to costs.  MCR 7.219.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood